[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-13688

Non-Argument Calendar

————————————————

TAMEKIA FORTNER,

Plaintiff-Appellant,

*versus*

MEGAN J. BRENNAN,

Defendant,

UNITED STATES POSTMASTER GENERAL,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01409-NAD

_____

Before WILSON, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Tamekia Fortner appeals the district court's grant of summary judgment to the Postmaster General for the United States Postal Service on her race and sex discrimination, retaliation, and retaliatory hostile work environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Because none of the allegedly discriminatory or retaliatory actions she complained of rose to the requisite level of tangible, adverse employment actions, we affirm.

**I.**

Fortner, an African-American woman, is a maintenance mechanic for USPS. In fall 2017, Fortner had an attendance problem—from October 1, 2017 to the end of the calendar year, she was late thirty-three times. Fortner had several "official discussions" with her supervisor on account of her attendance issues. An official discussion is "not placed in an employee's personnel file," because it is "considered a lesser form of discipline." On the "discipline continuum" for USPS, this is the "first tool a manager may use to correct negative employee behaviors and is usually the precursor to written discipline such as a Letter of

Warning." She was particularly aggrieved by these discussions, she claims, because her male coworkers were also reporting late to work and were not disciplined.

Three "official discussions" and two schedule accommodations later, Fortner was still struggling to keep up with her assigned schedule, so her supervisor issued a letter of warning in December 2017. In response to that letter, Fortner filed a union grievance, but it was settled in January and the letter of warning was rescinded. Around the same time, Fortner was assigned to work in "the tunnel." There, in the basement of the USPS building, she was "tasked with removing locks from vintage post office box units," a job that she claims was "undesirable." Despite her displeasure, she maintained the same job title and received no pay reduction.

The new year did not ring in a streak of unblemished attendance for Fortner. From February through May 2018, she had several more "performance meetings" or "attendance reviews" with her supervisor to discuss her attendance issues. Then, on April 19, 2018, Fortner had a verbal altercation with another employee in which she used profanity. Her supervisor recommended a seven-day suspension, but it was ultimately withdrawn and reduced to another official discussion.

Fortner initiated this action in August 2019, alleging that USPS discriminated against her based on her race and sex, and retaliated against her because of the union grievance she filed in December 2017. The district court granted partial summary

judgment to USPS because Fortner's claims were unexhausted and untimely.   Going forward, her claims for discrimination and retaliation could only rely on conduct that occurred after April 7, 2018.[1]   She amended her complaint to include a claim for retaliatory hostile work environment, and continued to make arguments based on pre-April 7 conduct.[2]

After the close of discovery, USPS moved again for summary judgment, and the district court granted the motion.

## II.

We review a grant of summary judgment *de novo*.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] A federal employee who wishes to sue under Title VII must initiate administrative review of any claimed discrimination or retaliation within 45 days of the alleged wrongful conduct.  *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008); 42 U.S.C. § 2000e-16(b).  Fortner did not submit an EEO form until May 22, 2018, so only conduct within the preceding 45 days may properly be considered.

[2] While the evidence of earlier incidents is admissible with respect to the retaliatory hostile work environment claim, it is still inadmissible when it comes to her discrimination and retaliation claims.  Even considering all the evidence, however, Fortner failed to allege an adverse employment action to support any of her claims, so we will not endeavor to delineate the evidence.

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

For federal employers, all "personnel actions affecting employees" must be "made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Personnel actions include "most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews." *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020). "Trivial slights," however, "are not actionable." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020).

Our cases have long held that § 2000e-16(a) also prohibits retaliation "against federal employees who file charges of discrimination." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1203 (11th Cir. 2021) (quotation omitted). To make out a case of retaliation, a plaintiff must show that "(1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) [she] established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). Adverse employment actions "consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts." *Monaghan*, 955 F.3d at 860.

Finally, Title VII also prohibits "the creation of a hostile work environment in retaliation for an employee's engagement in

protected activity." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 955 F.3d 828, 835 (11th Cir. 2021). But such claims will only prevail if the conduct complained of "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 836 (quotation omitted).

In sum, to succeed on any of her claims, Fortner must at the very least demonstrate that she was subjected to some kind of nontrivial employment action. But Fortner cannot clear that hurdle—she was subject to, at most, a stern talking-to. To recap, Fortner had several "official discussions" with her supervisor about attendance and appropriate workplace conduct, but none of these went into her personnel file. She was assigned to work on a task she did not like but which had no effect on her title or salary. And she had both a letter of warning and a suspension issued to her, which might have supported her claims, but for the fact that both were later withdrawn.

Fortner cannot show that any of these complained-of events caused any material change in the terms or conditions of her employment, that they had negative job consequences, or that they rose to a level that would have dissuaded a reasonable employee from making allegations of discrimination.

⋆      ⋆      ⋆

Because none of the conduct Fortner complained of rose to the level of a "personnel action" or "adverse employment action," the district court did not err by granting summary judgment to

22-13688              Opinion of the Court                    7

USPS on all of Fortner's claims.    The judgment is therefore **AFFIRMED**.